Appellant, Tucker, instituted this suit against appellee, Smellage, to cancel a note in the principal sum of $7,000 which had theretofore been executed and delivered by him to appellee and to recover $656 in money, which sum was included in a check for $1,343 given by him to appellee at the time he executed and delivered said note. He alleged that he was induced to execute said note and check and to deliver the same to appellee by certain false and fraudulent representations made to him by appellee at and prior to such delivery. Appellant also sought to recover $300, the alleged value of 2 1/2 shares of oil stock which he alleged belonged to him and had been converted by appellee. Appellee denied appellant's allegations and sought in a cross-action recovery on said note. The controversy involved in this suit grew out of a transaction between appellant and appellee on the 4th day of October, 1919. On that day appellee gave appellant his check for $8,125, and appellant transferred and delivered to him 25 shares of the capital stock of the Shamrock Oil Company. On the same day appellant prepared and he and appellee signed in duplicate a written contract as follows:
"This contract and agreement this day entered into by and between R. H. Smellage and J. W. Tucker, witnesseth:
"The said Tucker has this day sold and transferred to the said Smellage 25 shares, of a par value of $100.00 each, of Shamrock Oil Company stock, for $8,125.00 for the 25 shares.
"The said Tucker guarantees to the said Smellage a 10 per cent. on the investment of $8,125.00 on or before March 15, 1920.
"As a consideration for this guaranty on the part of Tucker he is to share on a fifty-fifty basis with Smellage on any and all increase over and above the guaranteed 10 per cent, on the entire 25 shares this day transferred.
"The value of this stock on the 15th day of March to be determined by a give or take price submitted by said Smellage.
"[Signed] J. W. Tucker.
"R. H. Smellage.
"Contract in duplicate at Waxahachie, Tex., this 4th day of October, 1919."
On or about the date specified in said contract for the adjustment of the rights of the parties thereto under the guaranty therein contained, a controversy arose as to the real nature of the transaction. Appellant claimed that he had sold said 25 shares of stock to appellee at $325 per share and was liable only on his guaranty. Appellee claimed that he loaned said sum of money to appellant to be repaid on said date and that said shares of stock were delivered to him as security therefor. After considerable discussion, this controversy was adjusted on April 15, 1920, by appellant's giving appellee his check for $1,343, and executing and delivering to him said note for $7,000, which by its terms was due and payable on December 31, 1920. Said check represented, according to an indorsement thereon, $1,000 paid on principal and $343 on interest. Said shares of stock were to be held as collateral security for said note, but they were returned to appellant to be reissued in his own name. A new certificate for 27 1/2 shares of said stock was issued to appellant, indorsed by him and delivered to appellee. There had been at the time of said latter transaction a material decline in the value of said stock. Nothing further was done until the latter part of the year 1924, *Page 877 
when said note was about to be barred by limitation and appellee had placed the same in the hands of his attorney for collection. Appellant then contended that at the time of the adjustment of the controversy between him and appellee by the execution and delivery of said check and note, he had lost or misplaced his copy of the original contract which has heretofore been set out: that his memory was not distinct about the matter; that appellee asserted that the transaction was a loan of said amount of money by him to appellant and that said stock was delivered to him as collateral security therefor; that appellee denied there was a written contract evidencing the original transaction, and that because of the high personal character of appellee he relied on his representation and made said adjustment of the controversy and executed and delivered his check and note as aforesaid; that he had recently discovered his copy of said contract; that said contract established that the original transaction was a sale; that at the time of the adjustment of said controversy on April 15, 1920, he only owed appellee on his guaranty 10 per cent. of the amount received by him for said stock, less dividends collected by appellee; and that his said cheek was for $656 more than he so owed. Appellee contended that the original transaction was a loan; that appellant prepared the written contract and that he signed it believing it to express the actual trade that had been made; that he produced his copy of said contract and exhibited it to appellant; and that when the matter was adjusted by the delivery of said check and note to him, he left his said copy with appellant or on his desk.
The case was tried to a jury. Both appellant and appellee introduced evidence tending to support their respective contentions There was a conflict in the evidence with reference to whether appellant authorized appellee to dispose of the additional 2 1/2 shares of stock embraced in the certificate when it was reissued in the name of appellant and delivered by him to appellee. The evidence showed that said stock had been liquidated and that appellee had received $2,750 as the proceeds of such liquidation, which sum he admitted should be credited on said note. The jury found, in response to special issues submitted, that: (a) The cash market value of the original 25 shares of oil stock delivered by appellant to appellee on the 15th day of March, 1920, was $225 per share; (b) appellant authorized appellee to dispose of the additional 2 1/2 shares of said stock; (c) appellee did not by false and fraudulent representations induce appellant to execute and deliver to him said $7,000 note; (d) at or prior to the execution of said note appellee showed appellant a copy of the original contract; (e) appellant delivered to appellee 27 1/2 shares of stock as collateral to secure said note. The court rendered judgment on the verdict for appellee against appellant for $8,240.79, being the amount of said note, principal, interest, and attorney's fees, less a credit of $2,750 received by appellee on account of the liquidation of said stock. Appellant presents said judgment for review by this court.
 Opinion.
Appellant complains of the action of the court in submitting, over his objection, an issue asking the jury to find the market value of the 25 shares of oil stock on March 15, 1920. The grounds of said objection were that such value was immaterial and that there was no evidence on which the jury could base such a finding. Appellant himself testified that said stock was selling at that time for less than $325 a share and that the selling price could have been as low as $225 a share. We do not think that the market value of the stock at that time was immaterial Appellant contended at the trial that said contract by its terms guaranteed him a profit of 10 per cent. on his investment on said date specified therein, and entitled him to be reimbursed for depreciation in the value of said stock as well as for its failure to enhance in value. The contract is susceptible of such construction. Had the jury found that appellant was induced to make the settlement on April 15, 1920, by false and fraudulent representations made to him by appellee, appellee would have been entitled in any event to the benefit of such guaranty.
Appellant further complains of the action of the court in overruling his objection to the manner in which the court submitted the issue of whether appellee, by means of false and fraudulent representations, induced appellant to execute said $7,000 note and deliver the same to him. The only ground of objection was that said issue did not include the $1,343 check which appellant executed and delivered to appellee. The undisputed evidence showed that both check and note were executed and delivered at the same time, upon the same consideration, and as a part of the same transaction. The jury not only found that the execution and delivery of the note was not induced by any fraud on the part of appellee, but that appellee, at and prior to the time of such execution and delivery, exhibited to appellant his copy of the written contract. If he did so, appellant was fully advised of the existence and contents of said contract and his rights thereunder at the time he executed and delivered said note and check. Such finding precludes a recovery by appellant on the ground of fraud or deceit. Wortman v. Young (Tex.Com.App.) 235 S.W. 559, 560, 561. Had appellant framed a proper issue inquiring whether the execution and delivery of the check was induced by fraud as charged by appellant, and had presented the same to *Page 878 
the court separately with a request that the same be submitted to the jury for determination, the court would doubtless have done so.
Appellant, after the charge of the court had been prepared and submitted to counsel for criticism, and after he had presented his objections thereto, prepared and asked the court to submit to the jury a series of eight special issues. These issues were all under the same caption. They were copied in succession and not on separate sheets of paper. They were all submitted under one request and over a single signature of counsel. Three of said issues were in substance incorporated in the issues prepared and submitted by the court. One of said issues was purely evidentiary, and another was rendered wholly immaterial by findings of the jury on other issues. It is a well-settled rule in our practice that special requested issues or instructions presented en masse should be refused by the trial court if any one of them has been substantially given by the court in its main charge, or if any one of them should have been refused. Merchants' Ice Co. v. Scott Dodson (Tex.Civ.App.)186 S.W. 418, 422 (writ refused), and authorities there cited; Wall v. Lubbock, 52 Tex. Civ. App. 405, 118 S.W. 886, 889 (writ refused); Burnham, Hanna, Munger Co. v. Logan, Evans Smith, 88 Tex. 1, 7, 29 S.W. 1067, and authorities there cited; Standard Scale Supply Co. v. Chapin (Tex.Civ.App.) 218 S.W. 645, 647; White v. Bell (Tex.Civ.App.) 242 S.W. 1082, 1088, pars. 8 and 9, and authorities there cited.
We think the controlling issues in the case were submitted by the court. The jury in response thereto found against appellant's contentions.
The judgment of the trial court is affirmed.